**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Room 7216
Washington, DC 20530

Tel: 202-305-8727

September 4, 2026

**VIA CM/ECF**

Anastasia Dubrovsky, Clerk of Court
U.S. Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

RE: *Washington v. HUD*, No. 26-1922 (1st Cir.)
*National Alliance to End Homelessness v. HUD*, No. 26-1923 (1st Cir.)

Dear Ms. Dubrovsky:

The federal government respectfully submits this reply to plaintiffs' responses to the Court's order of August 27.

**1.** 42 U.S.C. § 11382(a) provides the Secretary with discretion to make a set-aside of Continuum of Care funds so long as there are sufficient funds to comply with the congressionally mandated set-asides under 42 U.S.C. § 11386b(a) & (b) and any similar limitations in the specific appropriations act. Plaintiffs' arguments to the contrary are unpersuasive.

Congress directed HUD to award funds "based on criteria established by the Secretary." 42 U.S.C. § 11386a. Congress identified certain required criteria and also empowered the Secretary to set "such other factors as the Secretary determines to be appropriate to carry out this part in an effective and efficient manner." *Id.* § 11386a(1)(G). Plaintiffs think that the set-aside does not help carry out the Continuum of Care program in an effective and efficient manner. NAEH Opp. 2, 5-6. But that policy disagreement does not deprive the Secretary of his discretion to establish the set-aside in the first place.

Contrary to plaintiffs' suggestion (*e.g.*, State Opp. 2-4; NAEH Opp. 5-6), Congress has not directed HUD to fund permanent supportive housing and rapid rehousing to the exclusion of all else. Indeed, Congress has directed HUD to fund a host of eligible activities across an array of program components, only one of which is permanent supportive housing. *See* 42 U.S.C. § 11383 (listing eligible activities); *see also* 42 U.S.C. § 11386b(d)(2)(B) (listing "support services concentrating on improving incomes to pay rent" as a component of proven effective activities for homeless families). And transitional housing, supportive services only, and homelessness prevention are all recognized components of the Continuum of Care program in HUD regulation. *See* 24 C.F.R. § 578.37(a)(2)-(3), (5).

The enumerated selection criteria also direct the Secretary to weigh numerous considerations, including the previous performance of the grantee across a wide range of metrics, 42 U.S.C. § 11386a(b)(1)(A); the grantee's methodology for prioritizing local projects, *id.* § 11386a(b)(1)(C); and the grantee's plan for the funds. This plan must describe how the number of homeless individuals will be reduced in the community and the extent to which the grantee will "incorporate comprehensive strategies for reducing homelessness, *including* the interventions referred to in section 11386b(d)." *Id.* § 11386a(b)(1)(B)(i), (iv)(II) (emphasis added). It follows that the "interventions referred to in section 11386b(d)" are thus not the only "comprehensive strategies" that the Secretary can fund or prioritize.

The fact that Congress has provided parameters of its own—directing that some funds be available for renewing awards (NAEH Opp. 6), for example, and establishing statutory set-asides (State Opp. 3-4)—does not strip the Secretary of authority to make decisions about the Continuum of Care program. Nor does the Secretary's discretion to establish criteria like the set-aside render 42 U.S.C. § 11386b(d) surplusage. *See* State Opp. 9-10; NAEH Opp. 4-5. 42 U.S.C. § 11386b(d) creates a category of bonuses or other incentives designed to reward widescale implementation of proven strategies. It serves that function even when the Secretary's discretion to establish selection criteria is accepted.

The states attempt to rely on *County of King v. Turner*, No. 25-3664, 2026 WL 2489361 (9th Cir. Aug. 25, 2026). State Opp. 4-5. But that case only underscores that the set-aside falls within the Secretary's authority. There, the court noted that a similar residual clause—authorizing the Secretary to set terms and conditions "to carry out this part in an effective and efficient manner," 42 U.S.C. § 11386(b)(8)—"contemplates conditions designed to facilitate the operation of the CoC program, to ensure the program produces results set out by Congress, 42 U.S.C. § 11381(1) (noting the "goal of ending homelessness"), and the like." *County of King*, 2026 WL 2489361, at *10. That

is the nature of the residual clause here as well and the administrative record in this case strongly supports the Secretary's conclusion that the set-aside is "appropriate to carry out this part in an effective and efficient manner."

The set-aside at issue in this case does not conflict with the terms of the set-aside described in 42 U.S.C. § 11386b(a). *See* State Opp. 6-8. That provision requires HUD to dedicate Continuum of Care funds totaling at least 30% of the combined amount of Continuum of Care and Emergency Solutions Grants funds to permanent housing for individuals with disabilities or their families, unless doing so would not leave enough funds to renew all existing grants that would otherwise be funded. 42 U.S.C. § 11386b(a). The plain language of the statute does not support the states' reading that HUD can only invoke the suspension clause if it is, in fact, funding "all renewals." State Opp. 8; *see also* State Opp. 5-6. In any event, this grievance is with the HUD's approach to renewals and its invocation of the suspension clause, which is only indirectly related to the set-aside at issue here.

**2.** The term "bonuses or other incentives" as it is used in 42 U.S.C. § 11386b(d)(1) refers to funds that a grantee may receive if it fully implements one of the activities listed in subsection (d). Plaintiffs' attempts to shoehorn the set-aside into this provision are unsuccessful.

Plaintiffs reiterate their argument that the set-aside is an incentive in the colloquial sense. *See* NAEH Opp. 11; State Opp. 10-12, 14. According to the states, for example, an "incentive is something that motivates or encourages a person or organization to take a particular action." State Opp. 11. But the same would be true of any selection criteria or requirement, which are plainly not "bonuses or other incentives" within the meaning of the statute. HUD's use of the word "incentivize" in the notice of funding opportunity (State Opp. 11-12) is colloquial as well and is not used as a statutory term of art. In short, just because a selection criterion serves as an incentive in the colloquial sense does not mean that the term "bonuses or other incentives" as it is used in 42 U.S.C. § 11386b(d)(1) carries that colloquial meaning. Interpreting the phrase otherwise would overtake other parts of the statute, including the Secretary's authority to set "such other factors as the Secretary determines to be appropriate to carry out this part in an effective and efficient manner." *Id.* § 11386a(1)(G). And Plaintiffs' reliance on dictionary definitions ignores the text of the provision as a whole.

In any event, plaintiffs are mistaken in characterizing the set-aside as a bonus or incentive. The set-aside is not an additive bonus available to qualifying grantees. Instead, it affects the primary project selection among applicants in a nationwide competition. It does not increase any geographic area's otherwise-available funding.

Nor does Plaintiffs' reliance on legislative history carry any weight. *See* NAEH Opp. 9-10. "When it comes to interpreting the law, speculation about what Congress may have intended matters far less than what Congress actually enacted." *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357, 381 (2025). Simply put, "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). The text demonstrates that the set-aside comfortably exists alongside bonuses or other incentives that fall under subsection (d).

Indeed, the fact that HUD employs other forms of bonuses and incentives outside the context of 42 U.S.C. § 11386b(d) further undermines plaintiffs' attempt to read that provision broadly. *See, e.g.*, NAEH Opp. 11 n.2 (identifying another type of bonus and noting that that "separate type of bonus is not at issue here"); State Opp. 13-14 (describing an incentive for cooperation with healthcare providers that Congress directed HUD to impose when appropriating 2024 funds). Not all "bonuses" and "incentives" are "bonuses or other incentives" within the narrow meaning of 42 U.S.C. § 11386b(d)(1).

HUD regulation (discussed at NAEH Opp. 10-11) is consistent with this reading. Specifically, 24 C.F.R. § 578.17(a)(2)(ii) states that, in calculating a geographic area's annual funding need, HUD will "deduct[] the amount published in the NOFA as being set aside to provide a bonus to geographic areas for activities that have proven to be effective in reducing homelessness generally or for specific subpopulations listed in the NOFA or achieving homeless prevention and independent living goals established in the NOFA and to meet policy priorities set in the NOFA." 24 C.F.R. § 578.17(a)(2)(ii). The fact that the regulation uses the term "bonus" is no surprise, as the provision refers to the types of activities discussed in 42 U.S.C. § 11386b(d) itself. That does not mean that any "amount that HUD sets aside for a particular activity" is a "bonus" within the meaning of 42 U.S.C. § 11386b(d). And here, the set-aside is not even a "bonus" under 24 C.F.R. § 578.17.

Sincerely,

*/s/ Sarah Clark Griffin*
Sarah Clark Griffin
Counsel for the United States

cc: Counsel of Record (via CM/ECF)